### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEVI GIDDINGS,

        Plaintiff,

        v.

LAUREL HARRY, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 24-922

Magistrate Judge Maureen P. Kelly

Re: ECF No. 45

### MEMORANDUM OPINION

**KELLY, Magistrate Judge**

Plaintiff Levi Giddings ("Plaintiff") brings this action against Defendants Laurel Harry ("Harry"), Tammy Ferguson ("Ferguson"),[1] Tabb Bickell ("Bickell"), Michael Zaken ("Zaken"), and Stephen Buzas ("Buzas") (collectively, the "Defendants") asserting claims under 42 U.S.C. § 1983.  Pending before the Court is the Defendants' Motion to Dismiss Third Amended Complaint ("Motion to Dismiss").  ECF No. 45.  For the reasons set forth herein, the Motion to Dismiss will be granted in part and denied in part.[2]

---

[1]    Although Plaintiff identifies this Defendant as "Tammy Fergerson," the Court will use the proper spelling of her last name.

[2]    Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed.  ECF Nos. 7, 27.

1

## I.    FACTUAL BACKGROUND

The factual allegations are taken from the operative Third Amended Complaint.  ECF No. 42.  Although the precise nature of Plaintiff's allegations is not always entirely clear, the Court has endeavored to read his claims as broadly as reasonably possible.

At all relevant times, Plaintiff has been in the custody of the Pennsylvania Department of Corrections ("DOC").  Id. ¶ 4.  He is currently confined at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill") but was confined at the State Correctional Institution at Greene, Pennsylvania ("SCI-Greene") during the events relevant to the Third Amended Complaint.  Id.  Defendant Hardy is the Secretary of the DOC, Ferguson was the Regional Deputy Secretary of the DOC, Bickell is the Regional Deputy Secretary of the DOC, Zaken was the Superintendent at SCI-Greene, and Buzas is the Deputy Superintendent at SCI-Greene.  Id. ¶¶ 5-8.

Plaintiff was serving a 5 to 10-year sentence of imprisonment at SCI-Greene.  Id. ¶ 16.  Sometime in 2021, Plaintiff received a 90-day DC sanction for some undisclosed misconduct.[3]  Id. ¶¶ 10, 12, 16.  Plaintiff completed this sentence on October 6, 2021.  Id. ¶ 12.  On or around this date, Defendants voted and recommended Plaintiff for the Restricted Release List ("RRL") and solitary confinement in the Intensive Management Unit ("IMU") at SCI-Greene.[4]  Id. ¶¶ 10, 11, 16, 36.  Plaintiff's placement in the IMU program was for three years with a year of probation in the general population to follow.  Id. ¶¶ 16, 24.  There was no hearing, and no psychiatric evaluation was performed to determine whether Plaintiff was fit for long-term solitary confinement.

---

[3]    The abbreviation "DC" stands for disciplinary custody.

[4]    Plaintiff appears to assert that he continues to be in the IMU at SCI-Camp Hill.  Id. ¶ 4.  It is unclear which, if any, of the allegations in the Third Amended Complaint pertain to his time at SCI-Camp Hill; the allegations appear to be about his confinement at SCI-Greene.

Id. ¶¶ 11, 18.  Plaintiff asserts that he did not have a history of behavior to warrant such a designation per DC-ADM 802 policy.  Id. ¶¶ 15, 36-44.

While in solitary confinement, Plaintiff alleges to have suffered from "tortuous conditions," id. ¶ 24, and claims that he was deprived of "any and all minimal civilized measure of life's necessities," id. ¶ 37.  The conditions he endured included:

- Being confined to his cell for 23 hours a day, id. ¶ 13;
- Cell vent ducts that were filled with lint and dust that impacted his breathing, id. ¶ 30;
- Bad water that was foggy with an oily texture, id. ¶ 31;
- Not receiving proper mental health care, id. ¶ 32;
- Being provided physical exercise only in "dog kennel-style cages" for "3 hours per-week-day," id. ¶¶ 33, 54;
- A 24-hour nightlight that deprived him of sleep, id. ¶ 34;
- Being subjected to fully naked strip searches and visual anal examinations while handcuffed before exiting his cell, id. ¶ 35;
- Being denied therapeutic activities, *i.e.*, "no educational group, religion, counseling, or activities that can help Plaintiff with his mental illness," id. ¶ 45;
- Being permitted to shower only 3-4 days a week, id. ¶ 52;
- Windows that were tinted to keep him from looking outside, id. ¶ 53; and
- Rarely being allowed contact with others, id. ¶ 58.

As a result of his long-term placement in solitary confinement in the IMU, Plaintiff alleges that he suffered negative consequences to his mental health, including anxiety, sleep deprivation, PTSD, suicidal thoughts, and memory loss.  Id. ¶¶ 27, 28, 56.  Plaintiff further contends that his designation and placement impacted his chance of receiving early parole.  Id. ¶¶ 15-16, 37.

Plaintiff filed Grievance No. 1056564 challenging the conditions of his confinement on October 22, 2023.  ECF No. 42-10.  It was denied initially on November 14, 2023, ECF No. 42-11, and finally by the Chief Grievance Officer on January 29, 2024, ECF No. 42-15.  Plaintiff alleges that he attempted to appeal his RRL status but was told he could not do so.  ECF No. 42 ¶¶ 19, 46; ECF No. 42-5; ECF No. 42-7.

Plaintiff alleges in various parts of the Third Amended Complaint that Defendants retaliated against him, but these allegations are somewhat vague and not completely consistent. In paragraphs 16 and 20, for example, Plaintiff does not provide a reason for Defendants' purported retaliation. ECF No. 42 ¶¶ 16, 20. Later in the pleading, Plaintiff states that Defendants' "retaliatory conduct … was motivated substantially by Defendants['] desire to punish Plaintiff for his pas[t] actions and for exercising his constitutional right." Id. ¶ 36. In the following paragraph, he similarly claims that the retaliatory conduct was for "constitutionally protected" activity and "past behavior or misconduct." Id. ¶ 37.

The most clarity Plaintiff offers is in alleging that Defendants Buzas and Zaken retaliated by informing Plaintiff that he will remain in solitary confinement until his release date for "filing paper work or trying to appeal such RRL and IMU placement." Id. ¶ 59. He further characterizes the retaliation as "Defendants threatening to keep Plaintiff on RRL in the IMU for exercising his right to seek redress from the prison through the use of the prison grievance system." Id. ¶ 62.

## II.   PROCEDURAL HISTORY

Plaintiff initiated this action by lodging a Complaint on June 26, 2024, and filing a Motion for Leave to Proceed in Forma Pauperis ("IFP") on July 3, 2024. ECF Nos. 1, 3. The IFP Motion was granted, and Plaintiff's Complaint was docketed on December 6, 2024. ECF Nos. 9, 11. Defendants filed a Motion to Dismiss for Failure to State a Claim on March 24, 2025. ECF No. 17. In response, Plaintiff sought leave to amend the Complaint, which the Court granted. ECF Nos. 23, 24. The Amended Complaint was filed on May 28, 2025. ECF No. 25.

On June 6, 2025, Defendants filed a renewed Motion to Dismiss. ECF No. 28. Plaintiff again sought leave to amend, which the Court granted. ECF Nos. 32, 33. The Second Amended Complaint was filed on July 10, 2025. ECF No. 34. Defendants again moved to dismiss this

pleading, and Plaintiff again amended.  ECF Nos. 36, 39, 40.  The operative Third Amended Complaint was filed on September 11, 2025.  ECF No. 42.

Plaintiff brings claims in the Third Amended Complaint pursuant to 42 U.S.C. § 1983.  Id. ¶ 1.[5]  Although Plaintiff does not bring his claims as numbered counts, he contends that Defendants violated his rights under the Eighth Amendment to the United States Constitution, retaliated against him for seeking redress in violation of the First Amendment, and violated his rights to due process and equal protection under the Fourteenth Amendment.  Id. ¶¶ 9, 60-63, 79.  He is suing each Defendant in both their individual and official capacities.  Id. ¶ 9.  He seeks various forms of declaratory and injunctive relief, compensatory damages in the amount of $50,000.00, punitive damages in the amount of $100,000.00, attorney fees and costs, and "such other relief as the Court deems just and proper."  Id. ¶¶ 79-86.

On September 25, 2025, Defendants filed the pending Motion to Dismiss, ECF No. 45, and Brief in Support, ECF No. 46.  On October 23, 2025, Plaintiff filed a Response in Opposition, ECF No. 48, and Brief in Support, ECF No. 49.  Defendants' Motion to Dismiss is ripe for consideration.

## III.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In assessing a plaintiff's claims, "the Court must accept

---

[5]    The Third Amended Complaint is comprised of 11 pages of detailed allegations and an appendix with 16 exhibits.  ECF No. 42; ECF Nos. 41-1 to 42-15.

all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-cv-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Id. (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based on these documents. See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Where, as here, the plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance.'"). "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).

## IV.    DISCUSSION

As noted, Plaintiff raises his claims pursuant to 42 U.S.C. § 1983.  This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  To state a claim under Section 1983, a plaintiff must allege facts sufficient to establish "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  Section 1983, by its own terms, creates no substantive rights, but rather provides a means for plaintiffs to seek relief for the deprivation of rights established by the Constitution or federal laws.  See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

### A.    Eighth Amendment Claim

Plaintiff asserts that his placement in solitary confinement for a period of three years in the IMU at SCI-Greene constituted cruel and unusual punishment in violation of the Eighth Amendment.  Defendants argue that although Plaintiff has alleged harsh conditions of confinement, he has not alleged the denial of basic human necessities sufficient to raise an Eighth Amendment claim.  ECF No. 46 at 6.  While acknowledging that the use of restrictive housing has been the subject of substantial recent litigation, Defendants further argue that solitary confinement *per se* does not violate the Eighth Amendment.  Id. at 6-7.

As the United States Supreme Court has explained, "[t]he Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman,

7

452 U.S. 337, 349 (1981)).  However, prison officials are required to "provide humane conditions of confinement," and must take "reasonable measures to guarantee the safety of inmates."  <u>Id.</u> (citations omitted).  Where, as here, an inmate challenges the conditions of his confinement under the Eighth Amendment, the relevant inquiry is whether the inmate has been deprived of the "minimal civilized measure of life's necessities."  <u>Rhodes</u>, 452 U.S. at 347.  <u>See also</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997).

For prison officials to have violated the Eighth Amendment: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'"  <u>Porter v. Pa. Dep't of Corr.</u>, 974 F.3d 431, 441 (3d Cir. 2020) (quoting <u>Farmer</u>, 511 U.S. at 834).  "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.'"  <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 837).  "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'"  <u>Clark v. Coupe</u>, 55 F.4th 167, 179 (3d Cir. 2022) (quoting <u>Farmer</u>, 511 U.S. at 834).

Solitary confinement presents unique considerations under Eighth Amendment jurisprudence.  As Defendants point out, the United States Court of Appeals for the Third Circuit has not found solitary confinement to violate the Eighth Amendment *per se*.  <u>See</u> <u>Wayne v. Wetzel</u>, No. 24-2816, 2026 WL 594906, at *2 (3d Cir. Mar. 3, 2026) ("Placement in '[s]egregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification.'" (quoting <u>Young v. Quinlan</u>, 960 F.2d 351, 364 (3d Cir. 1992))); <u>Johnson v. Wetzel</u>, 209 F. Supp. 3d 766, 777 (M.D. Pa. 2016) ("It is

undisputed that a prisoner's placement in solitary confinement does not, in itself, violate the Constitution." (citing Young, 960 F.2d at 364)). However, societal standards in regard to solitary confinement have evolved over time, and Third Circuit case law has reflected this evolution. The Third Circuit has acknowledged:

> the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement. [W]e observed a growing consensus – with roots going back a century – that [long term isolation] can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity. And the damage does not stop at mental harm: "Physical harm can also result. Studies have documented high rates of suicide and self-mutilation amongst inmates who have been subjected to solitary confinement. These behaviors are believed to be maladaptive mechanisms for dealing with the psychological suffering that comes from isolation."

 Palakovic v. Wetzel, 854 F.3d 209, 225-26 (3d Cir. 2017) (quoting Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 567-68 (3d Cir. 2017) (internal citations omitted)). See also Porter, 974 F.3d at 441 ("It is well established in both case law and scientific and medical research that prolonged solitary confinement … poses a substantial risk of serious psychological and physical harm[.]"). Nonetheless, courts have recognized some difference between long-term solitary confinement and shorter terms of solitary confinement, finding that reasonable periods of isolation "may be a necessary tool of prison discipline." Johnson, 209 F. Supp. 3d at 780.

There is no bright line rule as to when the duration of solitary confinement contravenes the Eighth Amendment. See Nelson v. Wetzel, No. 1:23-cv-1030, 2025 WL 28884817, at *7 (M.D. Pa. Oct. 9, 2025). The duration of Plaintiff's solitary confinement here – three years – is by no means insignificant, but it is far shorter than the "long-term" isolation discussed by the Third Circuit in cases such as Porter (33 years) and Williams (22 years). Also, unlike those cases –

9

where placement in solitary confinement was indefinite – Plaintiff appears to have been serving a fixed period of three years to be followed by a year of probation.

Nonetheless, Plaintiff has identified with reasonable specificity the conditions he endured during this time, including:

- Being confined to his cell for 23 hours a day, id. ¶13;
- Cell vent ducts that were filled with lint and dust that impacted his breathing, id. ¶ 30;
- Bad water that was foggy with an oily texture, id. ¶ 31;
- Not receiving proper mental health care, id. ¶ 32;
- Being provided physical exercise only in "dog kennel-style cages" for "3 hours per-week-day," id. ¶¶ 33, 54;
- A 24-hour nightlight that deprived him of sleep, id. ¶ 34;
- Being subjected to fully naked strip searches and visual anal examinations while handcuffed before exiting his cell, id. ¶ 35;
- Being denied therapeutic activities, i.e., "no educational group, religion, counseling, or activities that can help Plaintiff with his mental illness," id. ¶ 45;
- Being permitted to shower only 3-4 days a week, id. ¶ 52;
- Windows that were tinted to keep him from looking outside, id. ¶ 53; and
- Rarely being allowed contact with others, id. ¶ 58.

Plaintiff's allegations here, taken as true, constitute a significant deprivation over an unbroken period of three years that could demonstrate a substantial risk of serious harm.

Other courts in this district have found similar conditions for a similar duration of time to be sufficiently objectively serious to support an Eighth Amendment claim, particularly at the Rule 12(b)(6) stage. See, e.g., Blount v. Ackrom, No. 2:22-cv-1040, 2024 WL 2834034, at *4-5 (W.D. Pa. June 4, 2024); Wayne v. Clark, Civ. No. 21-4209, 2022 WL 17993131, at *8 (E.D. Pa. Dec. 29, 2022). The Court agrees with the courts in Blount and Wayne and finds that Plaintiff has adequately alleged, at this point in the proceedings, that he suffered a deprivation that was "objectively, sufficiently serious" to satisfy the first criterion in determining whether an inmate's conditions of confinement violate the Eighth Amendment. While the duration of Plaintiff's solitary confinement has not been as long as in many cases in which courts have discussed "long-

term" isolation, it was still a substantial amount of time and similar to the durations in Blount and Wayne. Moreover, the conditions he alleges, taken as true, could be found to result in the denial of the minimal civilized measure of life's necessities.

Upon review, the Court further finds that Plaintiff adequately alleges Defendants' deliberate indifference to the risks of Plaintiff's situation. While Plaintiff does not provide much detail about the specific knowledge or involvement of the Defendants in his confinement, the Third Circuit has emphasized that inmates "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." Porter, 974 F.3d at 445 (quoting Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010)). The risks created by prolonged solitary confinement are the type of "obvious, longstanding, pervasive, well-documented" risks that can show deliberate indifference. Id. (cleaned up).

This is particularly true when the inmate is known to suffer from mental illness. "Our precedents leave no room for doubt that individuals with a known history of serious mental illness have a clearly established right not to be subjected to prolonged solitary confinement without penological justification, regardless of their sentence." Williams v. Sec'y Pa. Dep't of Corr., 117 F.4th 503, 517 (3d Cir. 2024). The Third Circuit has defined doing so as an "obvious" violation of the Constitution. Id. See also Clark, 55 F.4th at 180 ("This Court has recognized 'the increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health.'" (quoting Palakovic, 854 F.3d at 441)).

The severity of whatever mental conditions Plaintiff faced are not entirely clear from the Third Amended Complaint. Plaintiff identifies himself as "a mental health patient" in the care, custody, and control of the DOC. ECF No. 42 ¶¶ 4, 24. He further alleges that no psychiatric

11

evaluation was performed to see if he was fit for long-term isolation in solitary confinement. <u>Id.</u> ¶ 18. He asserts that he has been diagnosed with anxiety, sleep deprivation, PTSD, suicidal thoughts, and memory loss. <u>Id.</u> ¶ 28. While it is not clear if he had received these diagnoses prior to being placed in solitary confinement, he clearly informed DOC personal about these psychological conditions in his grievance filed on October 22, 2023, noting that they had been exacerbated by his time in the IMU. ECF No. 42-10. Moreover, he alleges that he has received inadequate mental health care while in solitary confinement. <u>Id.</u>; ECF No. 42 ¶¶ 32, 45.

Given that the Court is required to take Plaintiff's allegations as true and to give him the benefit of every favorable inference, these references to his on-going mental health issues are sufficient at the pleading stage to support an inference that Defendants were aware of the potential impact of continued solitary confinement on Plaintiff's mental health and that they were therefore deliberately indifferent to his health and safety. The Third Amended Complaint may be vague as to the precise parameters of Plaintiff's claim, but at this point in the proceedings, the Court finds it best to allow these issues to be explored on a more fully developed record. <u>See</u> <u>Clark</u>, 55 F.4th at 188.[6]

Accordingly, Defendants' Motion to Dismiss is denied as to Plaintiff's Eighth Amendment claim.

### B.      First Amendment Retaliation Claim

Plaintiff further claims that Defendants retaliated against him for exercising his rights under the First Amendment to seek redress pursuant to the DOC grievance system. ECF No. 42 ¶¶ 16, 20, 36-37, 59, 62. Defendants contend that Plaintiff's "brief conclusory statements are

---

[6] The Court notes that in evaluating the subjective prong of the Eighth Amendment test, it also considers whether officials "'had a legitimate penological purpose' behind their conduct." <u>Porter</u>, 974 F.3d at 446 (quoting <u>Ricks v. Shover</u>, 891 F.3d 468, 475 (3d Cir. 2018)). At this point, however, such a determination is difficult because little is known about the underlying reasons for Plaintiff's placement on the RRL and confinement in the IMU.

without any additional facts to put Defendants on notice of any retaliation claim." ECF No. 46 at 5. They further assert that Plaintiff's placement on RRL and in IMU occurred prior to any grievances being filed by Plaintiff and that any such grievances, therefore, cannot be the basis on which they would have retaliated against him. They argue that this claim should be dismissed. Id.

To plead a *prima facie* claim for retaliation under the First Amendment, a plaintiff must allege: (1) that "the conduct which led to the alleged retaliation was constitutionally protected"; (2) that "he suffered some 'adverse action' at the hands of the prison officials" that "'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'"; and (3) a "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). If the plaintiff makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons related to a legitimate penological interest." DeFranco v. Wolfe, 387 F. App'x 147, 154-55 (3d Cir. 2010) (citing Rauser, 241 F.3d at 334).[7]

Generally, the filing of grievances constitutes constitutionally protected activity satisfying the first element of a *prima facie* case. See Laurensau v. Romarowics, 528 F. App'x 136, 139 (3d Cir. 2013); Pepe v. Lamas, 679 F. App'x 173, 175 (3d Cir. 2017) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). Therefore, to the extent Plaintiff alleges that by filing Grievance

---

[7] As noted, it is unclear whether Defendants can articulate any specific legitimate penological interest that would have led to the same decision to place Plaintiff in solitary confinement. Regardless, as this is an affirmative defense, the burden of pleading such an interest is on the Defendants; it is not Plaintiff's burden to plead the lack of such an interest. See Jones v. Bock, 549 U.S. 199, 212 (2007).

No. 1056564 challenging his designation and placement he engaged in protected activity, he has pled facts sufficient to satisfy the first criterion of a *prima facie* retaliation claim.

However, the vagueness and potentially contradictory nature of Plaintiff's retaliation allegations preclude a finding that Defendants took adverse action against Plaintiff because of his filing of any grievance. As noted above, in parts of the Third Amended Complaint, Plaintiff gives no basis for the alleged retaliatory conduct and in other parts vaguely mentions "past conduct." ECF No. 42 ¶¶ 16, 20, 36-37. Although he does, in other parts of the Third Amended Complaint, state that seeking redress through the grievance system was the reason for Defendants' retaliation, to the extent he is referencing Grievance No. 1056564, such grievance was filed after he had already been placed on the RRL and in the IMU program for a fixed period of three years (with an additional year of probation). Based on these allegations, Defendants' decision to place Plaintiff on the RRL and in the IMU program on or around October 6, 2021 could not have been in retaliation for a later grievance challenging that very decision.

Plaintiff likewise does not allege facts that would support an inference that his filing of Grievance No. 1056564 (or any other grievances) lengthened his time in solitary confinement. As noted, the term of his solitary confinement was set prior to any alleged protected activity. Plaintiff seems to allege that Buzas and Zaken taunted him that he would remain in solitary confinement until he was released from prison, but "verbal harassment does not constitute adverse action for purposes of a First Amendment retaliation claim." Baez v. Froehlich, No. 1:20-cv-148, 2021 WL 4341191, at *5 (W.D. Pa. Sept. 23, 2021). See also Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004).

To the extent that Plaintiff is attempting to allege that some retaliatory action was taken by Defendants as a result of his use of the DOC's grievance system, Plaintiff fails to allege facts in

the Third Amended Complaint sufficient to support such a claim. It is possible that Plaintiff intends to claim that his solitary confinement was improperly continued because of his protected activity, but such an allegation is not clearly set forth in the Third Amended Complaint. Accordingly, although the Court will grant Defendants' Motion to Dismiss as to the First Amendment retaliation claim, such dismissal will be without prejudice, and Plaintiff will be permitted a final opportunity to amend his pleading to clarify the nature of this claim.

### C.    Fourteenth Amendment Claims

#### 1.    Due Process

Plaintiff also alleges that Defendants violated his right to due process under the Fourteenth Amendment in regard to his placement in the IMU. Defendants argue that this claim is time barred because this case was brought more than two years after Plaintiff knew or should have known about the basis for his Section 1983 claim. ECF No. 46 at 8. They further contend that "any indefinite confinement in administrative custody in the IMU did not violate procedural due process where [Plaintiff] essentially admits to review by the Program Review Committee ("PRC")." Id. at 9.

The Fourteenth Amendment protects individuals from deprivations of "life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. However, an inmate's right to due process for a state-created liberty interest is limited to situations in which deprivation of that interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). What constitutes "atypical and significant" hardship "is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin, 112 F.3d at 706 (citing Sandin, 515 U.S. at 487).

15

Defendants do not specifically challenge that solitary confinement can qualify as a protected liberty interest.[8] In the context of restrictive confinement, a liberty interest generally accrues when the duration of the conditions are sufficiently prolonged and indefinite. See Porter, 974 F.3d at 450. See also Jackson v. Hunter, No. 3:18-cv-16446, 2021 WL 1338715, at *2 (D.N.J. Apr. 9, 2021) ("[P]lacement in 'administrative segregation only implicates a protectable liberty interest [sufficient to trigger due process protections] if it dramatically departs, in length of time or otherwise, from basic prison conditions.'" (quoting Crawford v. Lappin, 446 F. App'x 413, 415 (3d Cir. 2011))). For the reasons discussed in regard to Plaintiff's Eighth Amendment claim, Plaintiff's placement in the IMU could be construed as atypical to the point of implicating the Fourteenth Amendment.

Defendants allege, however, that the fact that Plaintiff was subject to periodic reviews by the PRC satisfies the demands of due process. Indeed, the Third Circuit has held that DOC procedures such as assessment by the PRC every 90 days "satisfy the minimal constitutional standards for due process," even where an inmate has been held in administrative custody for 20 years. Bowen, 248 F. App'x at 304. See also Washington-El v. Beard, 562 F. App'x 61, 63 (3d Cir. 2014). Defendants contend that Plaintiff has admitted to such periodic reviews. ECF No. 46 at 9.

The Court disagrees, however, that the Third Amended Complaint contains any such admission. Plaintiff does mention the PRC but states only that it "notified Plaintiff that he couldn't

---

[8] Defendants do assert, correctly, that being placed on the RRL did not deprive Plaintiff of any liberty interest. As the Court explained in Bertolette v. Little, No. 2:23-cv-330, 2023 WL 9100642 (W.D. Pa. Oct. 26, 2023), report and recommendation adopted, No. 2:23-cv-330, 2023 WL 8865873 (W.D. Pa. Dec. 22, 2023), "because placement on the RRL only changes the identity of decision-maker who can release an inmate to general population, placement on the RRL does not by itself impact a protected liberty interest, and therefore, does not trigger due process concerns." Id. at *5 (citing Bowen v. Ryan, 248 F. App'x 302, 304 (3d Cir. 2007)).

16

appeal his RRL placement in solitary confinement." ECF No. 42 ¶ 46.  Giving Plaintiff the benefit of every inference, as it must, the Court finds that this language could be more reasonably construed as a claim that the PRC had failed in its duty to provide adequate assessments.  Plaintiff acknowledges the existence of the PRC but seems to claim that its failure to permit him to appeal his solitary confinement is part of his action for the denial of due process.  Plaintiff likewise in no way admits that periodic reviews of any sort occurred every 90 days.   Unlike in <u>Bowen</u>, here the record does not, at this point, demonstrate that Plaintiff has been provided due process by way of periodic reviews.  In fact, Plaintiff appears to claim to the contrary.

This also impacts Defendants' timeliness argument.  In addition to DOC procedures like periodic assessments, due process also requires an initial opportunity to be heard.  <u>See</u> <u>Bowen</u>, 248 F. App'x at 304.  Plaintiff clearly alleges that he received no such hearing when he was initially placed in solitary confinement.  ECF No. 42 ¶¶ 11, 18.  Defendants contend that any due process claim based on the lack of an initial hearing is untimely because it was not filed within two years of the alleged deprivation.

Federal courts apply the statute of limitations governing personal injury actions in the state where the cause of action arose in determining the timeliness of a Section 1983 claim.  <u>See</u> <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 220 (3d Cir. 2003).   In Pennsylvania, the statute of limitations for personal injury claims is two years.  <u>See</u> <u>id.</u> (citing 42 Pa. Cons. Stat. § 5524(7)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'"  <u>Kach v. Hose</u>, 589 F.3d 626, 634 (3d Cir. 2009) (quoting <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998)).  <u>See</u> <u>also</u> <u>Cowan v. Scharfenberg</u>, Civ. No. 23-09446, 2026 WL 1097143, at *5 (D.N.J. Apr. 22, 2026) ("In the context of a Fourteenth Amendment due process claim, courts

17

have previously held that the statute of limitation period begins when the plaintiff's deprivation occurs.").

If Defendants were correct that the only aspect of Plaintiff's due process claim was the initial failure to conduct a hearing, their argument might have merit. See Hutchinson v. Cunningham, No. 2:17-cv-185, 2018 WL 1474906, at *21 (M.D. Ala. Jan. 23, 2018), report and recommendation adopted, No. 2:17-cv-185, 2018 WL 1474532 (M.D. Ala. Mar. 26, 2018) (finding that a Section 1983 due process claim was untimely because it was not filed within two years of the date on which the plaintiff was placed in solitary confinement without a hearing). However, because, liberally construed, Plaintiff's claim also includes the inadequacy in the periodic review process of his case, the "continuing violations doctrine" comes into play.

The continuing violations doctrine functions as "an equitable exception to the timely filing requirement." Rivera v. Wetzel, No. 2:22-cv-716, 2025 WL 388920, at *6 (W.D. Pa. Feb. 4, 2025) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). The doctrine provides that:

> When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitation period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

Id. (quoting Brenner v. Local 514, 927 F.2d 1283, 1295 (3d Cir. 1991)).

In Rivera, the defendants argued that the plaintiff's claim was untimely because he did not bring his case until more than two years after he was placed in solitary confinement. The plaintiff countered that a claim based on being held in solitary confinement over an extended time need not be brought within two years of when that confinement began. In agreeing with the plaintiff, the district court applied the continuing violations doctrine and found that the plaintiff's challenge to

18

his eight-and-a-half-year term of solitary confinement was timely based on his claim that the PRC, during its periodic reviews of this confinement, consistently denied him an opportunity to be heard. The court found that allegations of such a continuing violation permitted the plaintiff to generally raise the issue of his confinement, even in regard to conduct that occurred outside the limitation window. See id. See also Johnston v. Wetzel, 431 F. Supp. 3d 666, 676 (W.D. Pa. 2019) ("Because Johnston filed suit within two years of his release from solitary confinement, he is entitled to challenge all conduct that was a part of that alleged violation of his rights, even conduct that occurred outside the limitations period.").

Again, while the allegations in the Third Amended Complaint are by no means clear, they can be read to allege that the PRC's failure to permit Plaintiff to adequately appeal his solitary confinement was part of the alleged violation of his due process rights. There may be more to this story, but discovery is warranted to fully uncover the facts relating to this claim.

Accordingly, the Court will deny Defendants' Motion to Dismiss as to Plaintiff's Fourteenth Amendment due process claim.

### 2. Equal Protection

Plaintiff further claims that Defendants violated his Fourteenth Amendment right to equal protection. ECF No. 42 ¶¶ 9, 79. Defendants argue that this claim fails because Plaintiff has not alleged to be a member of any protected class, nor has he pled how he was treated differently than similarly situated individuals. ECF No. 46 at 10. The Court agrees that any equal protection claim Plaintiff is attempting to bring is not sufficiently set out in the Third Amended Complaint.

Defendants are correct that nowhere in the Third Amended Complaint does Plaintiff allege to be a member of a protected class that would implicate the Fourteenth Amendment. "In a traditional case brought under the Equal Protection Clause, an inmate asserts a defendant treated

him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." Bailey v. Jurnak, No. 3:18-cv-1437, 2019 WL 2488035, at *6 (M.D. Pa. Jan. 3, 2019), report and recommendation adopted, No. 3:18-cv-1437, 2019 WL 995796 (M.D. Pa. Feb. 28, 2019) (citing Mack v. Warden Loretto FCI, 839 F.3d 286, 305 n.112 (3d Cir. 2016)). Plaintiff has made no such assertion here and therefore does not appear to have brought a "traditional" equal protection claim.

There is another theory under which a prisoner may bring a cause of action for equal protection known as a "class of one" claim in which a plaintiff does not allege discrimination based on membership in a protected class or particular group, but rather, asserts that a defendant treated him differently from others similarly situated for arbitrary or irrational reasons. See Bailey, 2019 WL 2488035, at *6. While Plaintiff does not expressly purport to raise such a claim under this theory, in any event, the Third Amended Complaint does not contain adequate factual allegations to support a class of one claim.

To state an equal protection violation under a class of one theory, a plaintiff "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). At the motion to dismiss stage, a plaintiff must allege facts sufficient to make plausible the existence of such similarly situated parties. See Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011). "[A]n equal-protection challenge must allege more than 'broad generalities' in identifying a comparator." Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 74 (3d Cir. 2022) (quoting Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007)). To be "similarly situated," parties must be alike "in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).

The Third Amended Complaint falls far short of meeting this pleading standard. It does not identify any specific individuals treated differently, much less set forth facts showing that their situations were like Plaintiff's in all relevant respects. Plaintiff, therefore, does not come close to adequately pleading a class of one claim.

As with Plaintiff's other causes of action, the vague nature of the Third Amended Complaint makes it difficult to discern whether an equal protection claim could potentially be shown to have factual support or whether Plaintiff, as a *pro se* party, has inadequately done so. Therefore, although the Court will grant Defendants' Motion to Dismiss as to this claim, such dismissal will be without prejudice and with leave to amend. Plaintiff must, in any amended pleading, indicate whether he is bringing a traditional or class of one equal protection claim and must provide far more factual detail in support of such a claim.

### D.    Amendment

If a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview St. Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Budhun v. Reading Hosp. and Med. Cntr., 765 F.3d 245, 259 (3d Cir. 2014). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun, 765 F.3d at 259.

As discussed herein, while Plaintiff has failed to adequately state a claim for retaliation in violation of the First Amendment or for a violation of equal protection under the Fourteenth Amendment, it is not clear whether this failure demonstrates that these claims have no factual basis or whether Plaintiff, as a *pro se* party, has simply failed to state and support the claims with sufficient clarity. Although Plaintiff has already amended his Complaint several times in this case, this is the first time he has had an opportunity to do so after having received some directive from

21

the Court as to the deficiencies in his pleaded claims. See United States ex rel. Carroll v. Hackensack Meridian Pascack Valley Med. Ctr., Civ. No. 21-18104, 2023 WL 8664583, at *5 n.5 (D.N.J. Dec. 14, 2023).

As such, amendment would not necessarily be futile, and the Court will grant Plaintiff leave to amend these claims by filing a Fourth Amended Complaint no later than August 3, 2026, to correct the pleading deficiencies identified in this Memorandum Opinion. This will be the final opportunity for amendment. If Plaintiff chooses to file a Fourth Amended Complaint, he must comply with the following:

(1) Plaintiff must fully and clearly set forth factual allegations sufficient to support any First Amendment retaliation and/or Fourteenth Amendment equal protection claim he chooses to raise.

(2) The Fourth Amended Complaint must be a pleading that stands by itself without reference to other filings in this case. It would supersede the Third Amended Complaint, and Plaintiff would not be able to rely on allegations contained in the Third Amended Complaint.

(3) Therefore, Plaintiff **must** include in the Fourth Amended Complaint his Eighth Amendment and Fourteenth Amendment due process claims. Plaintiff may amend these claims to provides clarity as to the nature of the claims, but even if he chooses to not to amend them, they **must** be set forth in the Fourth Amended Complaint.

22

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 45, is granted in part and denied in part, as follows:

- GRANTED as to Plaintiff's First Amendment retaliation and Fourteenth Amendment equal protection claims.  These claims are dismissed without prejudice and with leave to amend.

- DENIED as to Plaintiff's Eighth Amendment and Fourteenth Amendment due process claims.

The Court will enter an appropriate Order to follow.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2026

cc:    All counsel of record by Notice of Electronic Filing

Levi Giddings, NC2827
SCI-Camp Hill
P.O. Box 8837
2500 Lisburn Road
Camp Hill, PA 17001

23